IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

RACHELLE MARIE TIMMER,

    Plaintiff,

vs.                                                                                                    CIV No. 15-203 CG

CAROLYN W. COLVIN,
Acting Commissioner
Social Security Administration,

    Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Plaintiff Rachelle Marie Timmer's *Motion to Reverse or Remand Administrative Agency Decision, With Supporting Memorandum* ("Motion"), (Doc. 18), filed August 7, 2015; Defendant's *Brief in Response to Plaintiff's Motion to Reverse and Remand, With Supporting Memorandum* ("Response"), (Doc. 21), filed November 9, 2015; and *Plaintiff's Reply* ("Reply"), (Doc. 22), filed November 21, 2015.

On January 13, 2012, Ms. Timmer filed an application for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 416(i) and 423, alleging disabilities commencing on September 1, 2010. (Administrative Record "AR" 164). Ms. Timmer's earnings records indicate that she remained insured for benefits through September 30, 2010 ("date last insured"). (AR 17). Her claim for benefits was initially denied, (AR 85-92), and subsequently denied upon reconsideration. (AR 93). A request for a hearing was filed on March 5, 2013, (AR 118-19), and a hearing was held on May 2, 2014 before Administrative Law Judge ("ALJ") Michelle K. Lindsay. (AR 28-84). Ms. Timmer and Thomas Griner, an impartial vocational expert ("VE"), testified at

the hearing. *Id.* Ms. Timmer was represented at the hearing by attorney Ronald Harris. (AR. 28). ALJ Lindsay issued an unfavorable decision on October 30, 2014, finding that Ms. Timmer was not disabled September 1, 2010 through September 30, 2010, the date last insured. (AR 17-27, 171). Through counsel, Ms. Timmer filed an application for review by the Appeals Counsel on November 19, 2014, (AR 10-13), which was denied on January 16, 2015. (AR 6-9). After receiving additional evidence from Mr. Harris on January 13, 2015, the Appeals Counsel denied Ms. Timmer's request for review a second time on February 18, 2016 (AR 1-5), making the decision of ALJ Lindsay the final decision of the Commissioner of the Social Security Administration (the "Commissioner") for purposes of this appeal.

Ms. Timmer argues that the ALJ committed reversible, legal error by: (1) not finding evidence of a severe impairment before September 30, 2010, her date last insured; and (2) failing to re-contact Ms. Timmer's treating medical providers, as required by 20 C.F.R. § 404.1512(e). (Doc. 18 at 9, 12).

The Court has reviewed the Motion, the Response, the Reply, and relevant law. Additionally, the Court has meticulously reviewed and considered the entire administrative record. Because the ALJ improperly found that Ms. Timmer's impairments were not severe at step two, the Court finds that the Motion should be **GRANTED** and that this case be **REMANDED** to the Commissioner for further proceedings.

**I.     Standard of Review**

The standard of review in a Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether the

correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) (citing *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497–98 (10th Cir. 1992)). If substantial evidence supports the ALJ's findings and the correct legal standards were applied, the Commissioner's decision stands and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). A court should meticulously review the entire record but should neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214. A court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, not the Appeals Council's denial of review. 20 C.F.R. § 404.981; *O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir. 1994).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214; *Doyal*, 331 F.3d at 760. An ALJ's decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214. While a court may not re-weigh the evidence or try the issues *de novo*, its examination of the record as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ]'s findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir.

2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

## II. Applicable Law and Sequential Evaluation Process

For purposes of DIB, a person establishes a disability when she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A), 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. § 416.905(a). In light of this definition for disability, a five-step sequential evaluation process ("SEP") has been established for evaluating a disability claim. 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).

At the first four steps of the SEP, the claimant has the burden to show that: (1) she is not engaged in "substantial gainful activity"; (2) she has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and (3) her impairment(s) either meet or equal one of the "Listings"[1] of presumptively disabling impairments; or (4) she is unable to perform her "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(i–iv), 416.920(a)(4)(i–iv); *Grogan*, 399 F.3d at 1261. If the ALJ determines the claimant cannot engage in past relevant work, she will proceed to step five of the evaluation process. At step five the burden of proof shifts to the Commissioner to show the claimant is able to perform other work in the national economy, considering her RFC, age, education, and work experience. *Grogan*, 399 F.3d at 1257.

## III. Background

Ms. Timmer initially applied for DIB alleging several medical impairments:

---

[1] 20 C.F.R. pt. 404, subpt. P, app. 1.

allergies, asthma, post-traumatic stress disorder ("PTSD"), panic attacks, anxiety, depression, child sexual abuse, and fibromyalgia.[2] (AR 203). Ms. Timmer submitted medical records from her primary care doctors from 2010 to 2014, although the majority of the records reflect treatment received between 2012 and 2014.

Ms. Timmer has a history of seeking treatment for her asthma, (AR 267-308, 313-340, 348-493), which she states she has dealt with her entire life. (AR 216). The medical records show that several doctors have diagnosed Ms. Timmer with different types of asthma between 2010 and 2014, including: asthma, unspecified (AR 252, 293, 300, 383, 418, 420, 434, 440, 455); intrinsic asthma (AR 253, 326, 365, 370, 373, 379, 418, 420, 431, 438, 458, 464, 467); asthma, extrinsic without status (AR 266, 270, 272, 274); asthma allergic (AR 283, 285, 302); and asthma with acute exacerbation (AR 287, 289). On October 18, 2013, Ms. Timmer's doctor classified her asthma as "severe persistent," (AR 382), based on a Pulmonary Function Report. (AR 393). During the period from 2010 to 2014, medical records show that Ms. Timmer took a combination of many different medications to control her asthma, including: advair diskus, albuterol sulfate, atrovent, augmentin, avelox, ceftriazone, cetirizine, cheratussin AC syrup, fingusinulair, ipratropium bromide, loratadine, montelukast sodium, prednisone, Proventil, singulair, solumedrol, ventolin, and a z-pak.[3] (AR 206, 214, 252, 288-90, 294, 325, 328, 331, 333, 336, 338, 364, 366, 367, 369, 372, 375, 377, 380, 382, 383, 417, 419, 430-31, 433-34, 437, 440, 452, 455, 458-59, 461, 464, 467, 470-71).

---

[2] On appeal, Ms. Timmer only alleges errors with the ALJ's findings as to her asthma and anxiety, thus the Court will confine its analysis to these two medical impairments. (See Doc. 18).
[3] The Court recognizes that Ms. Timmer was prescribed many different types of medication according to her medical records; however, the Court will limit its review to the medications that were specifically stated as being prescribed for asthma.

In addition to her asthma diagnosis, Ms. Timmer has received several mental health diagnoses associated with depression and anxiety. Doctors have diagnosed Ms. Timmer with depressive disorder, (AR 253, 326, 365, 370, 373, 379, 411-12, 418, 420, 438, 471); anxiety state, unspecified, (AR 253, 285, 293, 302, 326, 334, 365, 371, 373, 379, 383, 418, 420, 431, 438, 458, 467, 471); depression with anxiety, (AR 289, 298-99); and PTSD. (AR 289, 298, 302). At various times, Ms. Timmer has taken Ativan, amitriptyline, celexa, Effexor, hydroxyzine, lorazepam, valium, and venlafaxine for her anxiety and depression.[4] (AR 206, 216, 252-53, 290, 294, 325, 328, 331, 333, 336, 338, 364, 367, 369, 372, 375, 378, 380, 382, 417, 419, 430, 434, 437, 452, 455, 458-59, 461, 464, 467, 470-71).

On January 3, 2013, Pamela Trujillo, LBSW, submitted a Mental Impairment Questionnaire to the Social Security Administration. (AR 341). Ms. Trujillo began treating Ms. Timmer on June 7, 2012 and diagnosed her with adjustment disorder with mixed anxiety and depressed mood. (AR 341, 397, 399, 403, 405-06, 409, 458). Ms. Trujillo found that Ms. Timmer's "psychological impairments suggest that she is unable to sustain engagement in tasks required by most jobs," and determined that Ms. Timmer is incapable of performing a full-time job on a regular and continuing basis. (AR 342-43). On December 21, 2012, Jennifer McGill, PA-C, who has also treated Ms. Timmer since June 2012, submitted a medical opinion form provided to her by Ms. Timmer's attorney. Ms. McGill found that "anxiety limits [Ms. Timmer's] ability to focus, multitask, and work without emotional outbursts." (AR 344).

---

[4] As above, the Court limits its review of medications to those specifically stated in the medical records to be prescribed for anxiety or depression.

6

In addition to the records from Ms. Timmer's primary care providers, four consultative examinations ("CE") were completed for purposes of diagnosing Ms. Timmer's medically determinable impairments and the severity of those impairments. (AR 85-100). In February 2012, N.D. Nickerson, M.D., completed a physical residual functional capacity ("RFC") assessment and determined that Ms. Timmer could perform medium exertion work, with the restrictions that she needs to avoid extreme cold, fumes, odors, dusts, gases, and poor ventilation. (AR 90-91). In March 2012, state agency medical consultant ("ME"), Elizabeth Chang, M.D., noted Ms. Timmer suffered from three medical impairments, fibromyalgia, asthma, and anxiety disorder, on the Case Analysis form that she completed. (AR 88). Dr. Change classified the severity of each of these impairments as severe. *Id.* In her analysis, Dr. Chang stated that "[Ms. Timmer] has severe impairments but they do not meet or equal the listings." *Id.* Under the medical disposition section of the form, Dr. Chang stated that "[t]here [was] insufficient evidence to evaluate the claim" from the period of September 1 to September 30, 2010. (AR 89).

A reconsideration analysis was performed by ME Scott R. Walker, M.D., in January 2013. Dr. Walker affirmed Dr. Chang's analysis that Ms. Timmer's impairments were severe, but that they did not meet or equal a listing. (AR 97). In February 2013, ME Mark A. Werner, M.D., also affirmed Dr. Chang's impairment diagnosis and classification of severe. (AR 98). Dr. Werner additionally affirmed Dr. Nickerson's RFC assessment. *Id.*

At step one, the ALJ found that Ms. Timmer has not engaged in substantial gainful activity since the alleged onset date of September 1, 2010. (AR 19). At step 2,

the ALJ found that Ms. Timmer had two medically determinable impairments, asthma and anxiety disorder. *Id.* However, the ALJ found that Ms. Timmer did not have a severe impairment or combination of impairments pursuant to 20 C.F.R. § 404.1521 *et seq. Id.*

## IV. Analysis

Ms. Timmer argues that the ALJ committed reversible, legal error by: (1) not finding evidence of a severe impairment before September 30, 2010, her date last insured; and (2) failing to re-contact Ms. Timmer's treating medical providers as required by 20 C.F.R. § 404.1512(e). (Doc. 18 at 9, 12).

The Commissioner responds that the ALJ's decision is supported by substantial evidence and that the ALJ reasonably found that Ms. Timmer had the medically determinable impairments of asthma and anxiety disorder, but that the impairments were not severe prior to her date last insured. (Doc. 21 at 6-7). Additionally, the Commissioner argues that the ALJ was not required to re-contact her medical providers because the evidence before the ALJ was adequate for the ALJ to make a decision. *Id.* at 14.

### A. *De Minimus Standard at Step Two*

At the second step of the evaluation process, the ALJ must determine whether medical evidence shows an impairment or combination of impairments that is so severe that the claimant is unable to engage in any substantial gainful activity. Social Security Policy ("SSR") 85-28, 1985 WL 56856 *3 (Jan. 1, 1985). A finding of "not severe" is made when the medical evidence "establishes only a slight abnormality . . . which would have not more than a minimal effect on an individual's ability to work . . ." *Id.* The showing at step two is characterized as "de minmis;" however, the mere presence of a

condition is not sufficient to meet the step two standard. *Williamson v. Barnhart*, 350 F.3d 1097, 1100 (10th Cir. 2003) (citing *Hinkle v. Apfel*, 132 F.3d 1349, 1352 (10th Cir. 1997)); *see Bowen v. Yuckert*, 482 U.S. 137, 153 (1987) (step two designed to identify "at an early stage" claimants with such slight impairments that they would be unlikely to be found disabled even if age, education, and experience were considered). At step two, the ALJ considers the "effect" of the impairment in determining whether a severe impairment exists. 20 C.F.R. § 416.920(a). Determining whether an impairment is severe requires a "careful evaluation of the medical findings which describe the impairment[s] and an informed judgment about [their] limiting effects on the individual's physical and mental ability[ies] to perform basic work activities . . ." SSR 85-28, 1985 WL 56856 *4.

    B.  <u>*Requirement to Evaluate Medical Opinions in the Record*</u>

Social Security Regulations require the ALJ to evaluate all medical opinions in the record, including the opinions of non-examining State agency physicians. *See* 20 C.F.R. § 416.927(b); SSR 96-6, 1996 WL 374180. As MEs are highly qualified physicians and experts in Social Security disability evaluations, an ALJ is required to consider their findings, except on the final decision of disability. Federal Old-Age, Survivors, and Disability Insurance and Supplemental Security Income for the Aged, Blind, and Disabled; Evaluating Opinion Evidence, 65 Fed. Reg. 11866-02, 11868 (March 7, 2000). In making DIB evaluations, the ALJ must explain the weight given to the opinion of a ME. *Id.*

Every medical source opinion should be weighed by the ALJ in consideration of the following, applicable "deference factors":

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Watkins v. Barnhart*, 350 F.3d 1297, 1300-01 (10th Cir. 2003); *see also* 20 C.F.R. § 416.927 (c)-(d). Ultimately, the ALJ must give good reasons—reasons that are "sufficiently specific to [be] clear to any subsequent reviewers"—for the weight that she ultimately assigns to the opinions. *Langley*, 373 F.3d at 1119 (citations omitted). Failure to do so constitutes legal error. *See Kerwin v. Astrue*, No. 06-6343, 224 Fed. Appx. 880, 884 (10th Cir. Aug. 8, 2007) (unpublished).

    C. <u>Analysis of Medical Opinions at Step Two</u>

Ms. Timmer argues that in finding that she did not suffer a severe impairment, the ALJ failed to properly weigh the medical opinions in the record. (Doc. 18 at 11). Specifically, she states that the ALJ dismissed the opinions of the MEs without explaining the reason why or the weight given to their opinions in her decision. *Id.*

The Commissioner responds that the ALJ considered the medical evidence presented and found that Ms. Timmer's impairments were not severe, which the Commissioner contends was consistent with the opinions of the MEs. (Doc. 21 at 7). The Commissioner states that even if the ALJ made an error in the assessment of the MEs' opinions, any error was "without practical effect" because Ms. Timmer was not disabled during the period that she claims disability. *Id.* at 9, 11.

    1. *The ALJ's Findings at Step Two*

In her written opinion, the ALJ states that she considered all symptoms and the

extent to which those symptoms "can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR [§] 404.1529 and SSRs 96-p and 96-7p." (AR 20)  The ALJ also considered "opinion evidence in accordance with the requirements of 20 CFR [§] 404.1527 and SSRs 96-2p, 96-5p, 96-6p and 06-3p" in determining that Ms. Timmer did not meet the severity requirement of step two. *Id.* With respect to the asthma claim, the ALJ specifically discussed Ms. Timmer's medical records from January 28, 2010, May 7, 2010, August 9, 2010, and September 23, 2010.  The ALJ found that the medical records between Ms. Timmer's alleged onset date and her date last insured to be "sparse," and found that none of the records noted any functional restrictions. (AR 20-21).

As to the anxiety claim, the ALJ determined that Ms. Timmer had a medically determinable mental impairment. Based on this determination, the ALJ considered the four broad functional areas as required by section 12.00C of the Listing of Impairments (20 C.F.R, Part 404, Subpart P, Appendix 1). *Id.* at 21. The ALJ found only a mild limitation for the first three functional areas and no episodes of decompensation in the fourth functional area, leading her to determine that Ms. Timmer's claimed mental impairment was not severe. *Id.* at 21-22.

Based on the medical records that the ALJ discussed in her opinion, the ALJ reasoned that Ms. Timmer's medical records show a history of asthma and anxiety, but that Ms. Timmer was able to work from 2007 to 2009 in spite of these impairments. The ALJ determined that although Ms. Timmer's medical records show significant current problems, there was no evidence of those severe problems prior to her date last insured. *Id.* at 22.

*2. Ms. Timmer's Medical Records*

The record contains evidence of Ms. Timmer's asthma and anxiety throughout her life. The ALJ did not acknowledge any of Ms. Timmer's medical evidence after 2010, the year she was last insured. This is error, as the regulations require the ALJ "to consider all evidence in [the] case record when [she] makes a determination or decision whether [claimant is] disabled," *Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008) (quoting 20 C.F.R. §§ 404.1520(a)(3), 416.920(a)(3)). Indeed, in considering the evidence, the ALJ must discuss "the significantly probative evidence [she] rejects." *Id.* (quoting *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996)).

Here, the ALJ specifically held that Ms. Timmer was able to work from 2007 to 2009 with her medical impairments; however, there are no medical records in the AR from this time period which the ALJ could base her opinion on. Although the ALJ discussed some of the medical records submitted from 2010, she wholly ignored the rest of the medical records that Ms. Timmer submitted. It is possible that the ALJ felt that the records after the date last insured could not inform her about Ms. Timmer's medical impairments from September 1, 2010 to September 30, 2010; however, since the ALJ did not explain her reasoning, this Court cannot "assess whether relevant evidence adequately supports the ALJ's conclusion . . ." *Chater*, 79 F.3d at 1009. As a result, the ALJ did not meet her obligations to both discuss the evidence she did rely on and the evidence which she rejected. *Id.* at 1010 (citing *Vincent ex rel. Vincent v. Heckler*, 739 F.29 1393, 1394-95 (9th Cir. 1984); *Zblewski v. Schweiker*, 732 F.2d 75, 79 (7th Cir. 1984).

For the mental disability analysis, it appears that the ALJ relied on a September

23, 2010 doctors visit by Ms. Timmer to analyze the four broad functional areas; however, the evidence from the doctor was not created using the functional areas and the ALJ did not explain how she interpreted the evidence to support her conclusion that Ms. Timmer was not severely impaired by her anxiety. *Carpenter*, 537 F.3d at 1269. Additionally, the ALJ ignored the analysis submitted by Ms. Trujillo and Ms. McGill.[5] Although Ms. Trujillo and Ms. McGill began treating Ms. Timmer after her date last insured, a treating physician can provide "a retrospective diagnosis of a claimant's condition," as long as there is evidence of an actual disability. *Adams v. Chater*, 93 F.3d 712, 714 (10th Cir. 1996). As above, because the ALJ did not discuss these reports, the Court cannot determine the reason why the ALJ did not consider them or give any weight in their analysis, and the Court must evaluate a decision based on the rationale provided by the ALJ. *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004).

The ALJ stated that she considered the medical evidence as required and the Court notes that "an ALJ is not required to discuss every piece of evidence." *Conkle v. Astrue*, No. 07-6104, 297 Fed. Appx. 803, 806 (10th Cir. Oct. 28, 2008) (unpublished) (quoting *Clifton*, 79 F.3d at 1009). However, in this case, the ALJ's decision does not discuss the majority of the medical evidence in the record or explain the reason for the absence of this evidence. *Id.* Thus, the ALJ's determination that Ms. Timmer's asthma and anxiety do not qualify as a severe impairment at step two lacks support in the record. The record shows repeated references to the diagnosis, effects of, and treatment of both impairments. *Haddock v. Astrue*, No. 08-cv-00393-PAB, 2009 WL

---

[5] The Court notes that as a Licensed Baccalaureate Social Worker ("LBSW") and a Certified Physician Assistant ("PA-C"), Ms. Trujillo and Ms. McGill are not "acceptable medical sources." 20 C.F.R. § 404.1513(a)(1)-(5). However, they are "other" medical sources, 20 C.F.R. § 404.1513(d)(1), whose opinions should be weighed according to SSA regulations. 20 C.F.R. § 404.1527(d), *see also Franz v. Astrue*, 509 F.3d 1299, 1302 (10th Cir. 2007) (citing SSR 06-03p, 2006 WL 2329939, at *4).

13

3162170, at *4 (D. Colo. Sept. 29, 2009) (unpublished) (citing *Hinkle*, 132 F.3d at 1352). There are no records that contradict these diagnoses. *Id.* Since the ALJ did not adequately discuss the evidence or tie her conclusions to the evidence, the Court is unable to determine how exactly the medical records supported the ALJ's decision, which is reversible legal error. *See Clifton*, 79 F.3d at 1009 (holding that in the absence of findings supported by the specific weighing of evidence, the ALJ leaves the Court unable to assess whether relevant evidence adequately supports her conclusion).

   *3.  The Opinions of the MEs*

In her decision, the ALJ stated that she gave the opinions of the MEs "significant weight in [her] determination." (AR at 22). However, the ALJ outright rejected the opinions of three of the MEs that stated Ms. Timmer had a severe physical impairment. The ALJ dismissed these opinions by simply stating that she did "not agree that the claimant had a 'severe' physical impairment," without giving an explanation as to why she was rejecting the opinions. *Id.* An ALJ may not pick and choose which parts of "an uncontradicted medical opinion to believe, relying on only those parts favorable to a finding of nondisability." *Hamlin v. Barnhart*, 365 F.3d 1208, 1219 (10th Cir. 2004) (citing *Switzer v. Heckler*, 742 F.3d 382, 385-86 (7th Cir. 1984)). By rejecting the opinion of the MEs without further explanation, the ALJ did not properly weigh their medical opinions, which is reversible legal error.

Moreover, an ALJ may not substitute her own medical opinion about the severity of Ms. Timmer's medical impairments for that of the MEs, which an ALJ is not permitted to do. *Candelario v. Barnhart*, No. 05-1222, 166 Fed. Appx. 379, 384 (10th Cir. Feb. 10, 2006) (unpublished) (citing *Hamlin*, 365 F.3d at 1221). Dismissing decisions regarding

medical severity by three state-appointed MEs in favor of her own opinion demonstrates that the ALJ did not properly weigh the medical evidence. Therefore, the Court finds that this case should be remanded for the ALJ to clarify her reasoning.

### 4.  Whether the ALJ's Error was Harmless

The Commissioner stated that any error the ALJ made in assessing the opinions of the MEs was "without practical effect on the underlying decision that Plaintiff was not disabled." (Doc. 21 at 9, 11). An ALJ's error may be considered harmless in exceptional circumstances, "where, based on material the ALJ did at least consider (just not properly), we could confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way." *Allen v. Barnhart*, 375 F.3d 1140, 1145 (10th Cir. 2004).

Specifically, the Commissioner argues that although one could come to a different conclusion based on the evidence, the ALJ's decision was free from legal error and supported by substantial evidence. (Doc. 21 at 11). Further, the Commissioner states that the MEa' opinions "clearly indicate[ ] that [Ms. Timmer] was not subject to physical or mental impairments of disabling severity." *Id.* at 9.

In contradiction to the Commissioners assertions, Dr. Chang, Dr. Walker, and Dr. Werner classified Ms. Timmer's impairments as severe on their Case Analysis forms. (AR 88, 97-98). In the Analysis section of the SSA's Evidence of Record, it specifically states that Ms. Timmer "has severe impairments . . ." *Id.* at 88. Additionally, the ALJ acknowledges that the MEs found severe impairments, but she dismissed the findings because she did not agree with them. *Id.* at 22.

The ALJ's disregard of the MEs' opinions regarding severity ended the disability analysis; however, if the ALJ had given the correct weight to the opinions, the analysis would have proceeded. *Trader v. Colvin*, No. 2:12-cv-00924-CW-EJF, 2013 WL 8750424 *8 (D. Utah Aug. 22, 2013). The Court cannot consider this a harmless error, because a harmless error is one "minor enough not to undermine confidence in the determination of th[e] case." *Id.* (quoting *Gay v. Sullivan*, 986 F.2d 1336, 1341 b,3 (10th Cir. 1993)). Thus, the ALJ's failure to consider the ME's severity finding is not harmless, and is reversible error. On remand, the ALJ should address the MEs' severity findings and explain why they are not persuasive.

**V.    Conclusion**

For the reasons discussed above, the Court concludes that the ALJ improperly found that Ms. Timmer did not suffer from a severe impairment at step two. On remand, the ALJ should properly weigh the medical opinions on this issue and adequately explain the weight she gives each opinion as it relates to her findings.

The Court does not decide any other issue raised by Ms. Timmer, as it is mooted by the proceedings conducted or the disposition reached on remand.

**IT IS THEREFORE ORDERED** that Plaintiff's *Motion to Reverse and Remand for Rehearing, With Supporting Memorandum*, (Doc. 18), be **GRANTED** and that this case be **REMANDED** to the Commissioner for further proceedings.

_____
THE HONORABLE CARMEN E. GARZA
UNITED STATES MAGISTRATE JUDGE